IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ALICIA M. REYES,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**NANCY A. BERRYHILL,** )<br>**Acting Commissioner of Social Security,** )<br>)<br>**Defendant.** ) | Civil Action No. 7:16CV340 |

### REPORT AND RECOMMENDATION

Plaintiff Alicia M. Reyes filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Reyes alleges that the Administrative Law Judge ("ALJ") erred by failing to properly (1) determine her RFC, including evaluating the consultative examiner's opinion, Reyes's ability to handle and finger objects, and conduct a function by function analysis; and (2) evaluate her credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Reyes's Motion for Summary Judgment (Dkt. No. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 16).

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Reyes failed to demonstrate that she was disabled

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Reyes filed for SSI and DIB on August 2, 2012, claiming her disability began on June 13, 2012 due to tremors, chronic obstructive pulmonary disease ("COPD"), asthma, sleep apnea, and nerve damage.[2] R. 53, 335, 342, 365, 368. The state agency denied Reyes's applications at the initial and reconsideration levels of administrative review. R. 150–62, 163–75, 179–94, 195–210. On June 26, 2014, ALJ Jeffrey Schueller held a hearing to consider Reyes's claims for DIB and SSI. R. 108–38. At this hearing, Reyes requested a consultative evaluation and, following the evaluation, a supplemental hearing took place on December 4, 2014. R. 70–99. Reyes was represented by counsel at both the June and December hearings, which included testimony from vocational experts Asheley Wells and Mark Hileman, respectively.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Reyes was born on September 3, 1976 and she was 35 years old on the alleged onset date, making her a "younger person" under the Act. R. 62, 163.

On January 30, 2015, the ALJ entered his decision analyzing Reyes's claims under the familiar five-step process[3] and denying her claim for benefits. R. 53–63. The ALJ found that Reyes was insured at the time of the alleged disability onset[4] and that she suffered from the severe impairments of de Quervain's disease, essential tremor, COPD/asthma, obesity, GERD, sciatica, and plantar fasciitis.[5] R. 55. The ALJ determined that these impairments, either individually or in combination, did not meet or equal a listed impairment. R. 60. The ALJ concluded that Reyes retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 60. Specifically, the ALJ found that Reyes can frequently balance, push/pull, stoop, kneel, crouch, and handle objects, can occasionally crawl, climb ramps and stairs, and finger objects, but can never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to cold, heat, wetness, humidity, vibrations, odors, fumes, irritating particulates, chemicals, and hazards. Id. The ALJ determined that Reyes was unable to perform her past relevant work as a telephone representative, front desk clerk, and sales clerk, but that she could perform other jobs that exist in significant numbers in the national economy, such as usher,

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). If the Commissioner finds that a claimant is disabled or not disabled at a step, the inquiry ends without proceeding to the next step of the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

[4] Reyes's date last insured was December 31, 2017, thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 53; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[5] The ALJ found that Reyes's panic disorder, depression, and bipolar disorder were non-severe impairments. R. 59.

3

gate guard, and furniture clerk. R. 61–62. Reyes appealed the ALJ's decision and the Appeals Council denied her request for review on May 27, 2016. R. 1–4.

## ANALYSIS

### A. Relevant Medical History

**(1) Tremor**

In August 2012, Reyes saw Joseph M. Ferrara, M.D. at Roanoke Neurology for evaluation of a tremor, which Reyes reported began sometime in early childhood. R. 481. Dr. Ferrara noted that the tremor is most pronounced in Reyes's hands, with the left hand more affected than the right hand, and at times involves her head. R. 482. Dr. Ferrara advised that Reyes undergo an occupational therapy assessment to explore adaptive measures to allow her to perform her activities of daily living with less difficulty, as well as possible vocational rehabilitation. R. 484. Reyes had follow up appointments with Dr. Ferrara in October 2012 and February, May, and November 2013, and November 2014, where Dr. Ferrara noted that Reyes left hand tremor was persistent during activities, but absent during rest, was aggravated by strenuous activity, hunger, fatigue, and her prescribed medication for obstructive pulmonary disease[6] (Albuterol), and was not responding to the pharmaceutical drugs prescribed. R. 482, 956, 962, 975, 983, 1555.

In September 2012, Reyes saw Amy Conforti, OTR, for occupational therapy, on referral from Drs. Ferrara and Robert E. Cassidy, M.D., and Ms. Conforti recommended custom

---

[6] Reyes had a number of medical appointments complaining of shortness of breath, and has been diagnosed with asthma. R. 740, 812, 907, 926, 1089, 1191. Reyes has also been diagnosed with emphysema and COPD. R. 1226, 1257.

orthotics.[7] R. 862, 864. Reyes returned for two follow-up visits in September and October, 2012; however, she failed to show for her scheduled appointment on October 12. R. 875–79.

### (2) Back Pain

Reyes saw her family doctor Catherine Rea, M.D. in April 2014, complaining of worsening back pain and leg numbness. R. 1407. An x-ray of her lumbar spine in June 2014 was normal. R. 1618. On July 14, 2014, Reyes saw Richard Weiss, M.D., M.B.A. for an evaluation of her back pain. R. 1422. On examination, she had lumbar tenderness, no swelling, normal muscle strength, negative straight leg raise, normal gate, and decreased reflexes and sensation. R. 1426–27. Dr. Weiss diagnosed Reyes with mild spondylosis deformans of the lumbar spine, and referred her to physical therapy. R. 1427–28. In August 2014, Reyes presented for a physical therapy evaluation. R. 1447. However, Reyes was discharged from physical therapy when she failed to attend any of her subsequent scheduled appointments. R 1454–55.

### (3) Anxiety

Reyes saw Laura B. Cieraszynski, D.O. in September 2012, complaining of worsening anxiety following the birth of her child two months previously. R. 835. The record indicates that Reyes "reports no help at home, leading to an inability to get away or relax." Id. In February 2014, Reyes underwent a psychiatric evaluation at Advanced Telepsychiatry, Inc., and was assessed with panic disorder and panic attacks. R. 1326. At a follow-up visit In March 2014, Joseph Iskandar, D.O. noted bipolar disorder, depression, and panic disorder, and assessed her as "stable." R. 1322.

---

[7] Reyes saw Dr. Cassidy in August 2012, complaining of severe bilateral wrist pain, worse in her left wrist. R. 781. On physical exam, Dr. Cassidy noted "tenderness over the de Quervain's canal" and weakness in grip. R. 782. At follow up appointments in August 2012, and November 2014, Reyes complained of continued bilateral wrist pain. R. 786, 1581.

5

**(3) Medical Opinions**

On July 27, 2014, William Humphries completed a Medical Consultant Report. R. 1434–43. Dr. Humphries diagnosed tremors, de Quervain's synovities, obesity, COPD, chronic back strain, and sleep apnea. R. 1436. Among other limitations, he found that she could frequently handle and occasionally finger objects, sit for 2 hours and stand and walk for 1 hour at one time, and she could sit, stand, and walk for a total of 6 hours in an 8-hour day. R. 1439.

On October 15, 2012 and May 14, 2013, state agency physicians Lewis Singer, M.D. and Richard Surrusco, M.D., reviewed the record and both found that Reyes was capable of performing a limited range of light work. R. 163–75, 195–210.

**B. RFC Findings and Function by Function Analysis**

Reyes argues that the ALJ's RFC findings are not supported by substantial evidence, specifically regarding whether the ALJ should have found Reyes required a sit/stand option and could only occasionally, instead of frequently handle objects. Reyes also asserts that the ALJ failed to make any "specific findings regarding [Reyes] manipulative limitations, her inability to maintain a static work posture, or her need to lie down [during the day]." Pl.'s Br. at 26, Dkt. No. 15. However, these arguments amount to disagreements with the ALJ's RFC determination and essentially ask the court to reweigh the evidence.

A function by function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his

ultimate findings).. The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Reyes asserts that the ALJ's conclusion that it is unclear whether Dr. Humphries's report requires a sit/stand option is incorrect, because the limitations found by Dr. Humphries clearly require a sit/stand option. Pl.'s Br. at 22, Dkt. No. 15. Reyes asserts that the medical evidence "establishes that her lumbar spine imposes significant limitations on [her] ability to stand and sit." Pl.'s Br. at 24. Reyes points to the medical evidence showing low back pain, numbness in her legs and feet, sciatica, and her testimony regarding her inability to sit or stand very long. Pl's. Br. at 22.

At the June 26, 2014 hearing, the VE testified that an individual with Reyes's limitations who could sit for up to six hours, but stand or walk for only two hours, would have no work available in the national economy. R. 134. The VE stated that the restriction of occasional fine manipulation, coupled with sedentary work, was the key limitation resulting in a finding of no work. R. 134–35. Following the VE's testimony, the ALJ noted that the central question in the case was "is it light or sedentary" work. R. 136. After the June 2014 hearing, the ALJ sent Reyes for a consultative examination, and then reconvened for a supplemental hearing in December 2014.

Dr. Humphries's consultative report indicates that Reyes can sit for two hours and stand or walk for one hour at a time, without interruption, in an 8 hour work day. R. 1439. However, Reyes can sit, stand, or walk, for a total of 6 hours in an 8 hour work day. Id. The ALJ addressed this with the VE at the December 2014 hearing, asking whether these limitations resulted in a light or sedentary categorization, and the need for a sit/stand option. R. 90–91. The VE testified:

> This would still be within what we consider a sedentary classification, especially being able to sit for two hours at a time and get up and adjust or whatever. I think it does reduce the light jobs, especially jobs where, you know, just standing one hour at a time, especially, if you're doing jobs with the public, especially you don't always have the allowance of going to sit or, lets say, even walking around.

R. 91. The VE also indicated that these limitations would allow some jobs at a light level that provide for a sit/stand option. Id.

In his opinion, the ALJ gave great weight to Dr. Humphries's report, writing, "While there is some question of the need for a sit/stand option in the consultative report, the medical evidence of record does not support this option." R. 60. While, the ALJ does not point to medical evidence that supports this finding in this paragraph, elsewhere in his opinion the ALJ writes that "there is no clear diagnosis of back pain, of which [Reyes] has recently been complaining" and

8

points to x-rays showing only stable degenerative changes. R. 60, 1416, 1573. The ALJ also cites to Reyes's complaints of back pain to her family doctor in March and July 2014, her diagnosis of mild spondylosis deformans of her lumbar spine, and her failure to show up for her proscribed course of physical therapy. R. 58. Further, when discussing Dr. Humphries's report, the ALJ notes that, though Reyes had complained of back pain for seven or eight years, she had never had surgery or injections, and had only minimally reduced range of motion of the spine and extremities, negative straight leg raising, and normal gait. R. 58; See Vincent v. Colvin, Case No. CV 4:15-02867-MGL, 2016 WL 7473429, at *2 (D.S.C. Dec. 29, 2016) (noting multiple instances when, the ALJ "could have done a better job explaining his decision" but the court was still able to affirm an appeal "when the opinion was read as a whole"); See also Bishop v. Comm'r of Soc. Sec., 583 Fed. App'x 65, 67 (4th Cir.2014) (unpublished) ("[I]f the [ALJ's] decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time."). Here, the ALJ adequately discussed and explained the weight he gave to Dr. Humphries' report, including the ALJ's conclusion that a sit/stand option was not required. Further, the record sufficiently supports the ALJ's determination that Reyes does not require a sit/stand option.

Reyes also argues that the medical evidence shows that due to her tremors and de Quervains disease, she can only occasionally handle objects, and thus the ALJ erred by concluding that she could frequently handle objects. Pl.'s Br. at 24, Dkt. No. 15. However, the ALJ adequately considered the medical record and opinions and explained how he arrived at his decision. The ALJ recognized that Reyes's suffered from the severe impairment of essential tremor, and specifically noted Reyes's testimony that her tremors are getting worse, and that after three to four hours of use, she can no longer use her hands due to pain. R. 56, 77–78. The

9

ALJ detailed Dr. Ferrara's treatment and Reyes' physical therapy for her tremors. R. 55–57. The ALJ also pointed to Dr. Humphries's finding, as well as the state agency doctors' findings at the initial and reconsideration levels, that Reyes could frequently handle objects. R. 60, 191, 207, 1440. In contrast, plaintiff cannot point to any doctor that concluded that Reyes can only occasionally handle objects. Indeed, while in May 2013 Dr. Ferrara found that Reyes's tremor interfered with typing and other fine motor tasks, he also noted she remained independent with her activities of daily living and that he hoped there were other occupations she would be better suited to perform. R. 484, 975.[8] In November 2013, Dr. Ferrara noted that "we have not had much luck in controlling the tremor," but in November 2014, Dr. Ferrara noted that while Reyes's tremor was "still incompletely defined" she has "seen some improvement with clonazepam . . . ." R. 983, 1555.

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a detailed summary of Reyes's medical records, the medical opinions, Reyes's hearing testimony and the ALJ's conclusions. R. 53–63. I find that the ALJ's RFC findings are supported by substantial evidence.

---

[8] I note that when the ALJ discussed Dr. Ferrara's note, he mistakenly indicated that Dr. Ferrara "*believed* there were other occupations that [Reyes] would be better suited to perform." R. 56 (emphasis added). However, transcription or similar errors are harmless if, notwithstanding the error, the ALJ adequately explained his findings in the record. See, e.g., Wright v. Comm'r of Soc. Sec., 386 Fed. App'x 105, 109 (3d Cir.2010) (ALJ's misstatements in written decision harmless error when regardless of them "ALJ gave an adequate explanation supported by substantial evidence in the record"); Bishop v. Comm'r of Soc. Sec., 583 Fed. App'x 65, 67 (4th Cir. 2014).

### C. Credibility[9]

Reyes argues that the ALJ's credibility findings are not supported by substantial evidence, asserting that he fails to provide specific reasons for rejecting her allegations. Reyes asserts that the ALJ failed to address her testimony regarding her "severe manipulative limitations, need to lie down during the day, and [] inability to maintain a static work posture" and, further, that the activities used by the ALJ to support his credibility findings, such as vacuuming and making baby bottles, are performed only briefly and are not directly relevant to her limitations. Pl.'s Br. at 29–30, Dkt. No. 15.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Reyes's subjective allegations of her disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with

---

[9] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued after the ALJ's consideration of Reyes's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility. See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, I note that the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider the claimant's report of her own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

The ALJ's opinion considered Reyes's medical history, as well as her own allegations regarding her pain and symptoms. The ALJ noted in his opinion Reyes's testimony regarding the severity of her symptoms, including that she could hear her hands "popping", her tendons swell, she could not afford her physical therapy, she wore hand braces every day, and that after three or four hours of use, her hands no longer worked. R. 55. However, he ultimately determined that Reyes was not entirely credible, writing, "[Reyes] has been a single parent, who has been able to care for her newborn child since she was born in June 2012.[10] [She] is able to manage her medications, her funds and accounts, and is able to shop, drive, and go out alone." And further, she is able to cook for herself, make up her baby's bottles, and clean, vacuum, and do her own laundry." R. 61. An ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions.  See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings

---

[10] Reyes testified at the hearing in 2014 that her sister took care of the baby 80% of the time and her brother and sister help her with chores. R. 126–27. However, this conflicts with her statement in September 2012 to Laura Byrne Cieraszynski, D.O., that she has "no help at home, leading to an inability to get away or relax." R. 835. Though Reyes' hearing date was about two years after her appointment with Dr. Cieraszynski, her appointment with Dr. Cieraszynski occurred only two months following her alleged onset date.

of fact, or is based on an inadequate reason or no reason at all.  See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence or disturb his credibility finding. Therefore, I find that substantial evidence exists to support the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** Reyes's Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** from the court's docket.

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  January 24, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

14